UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **E.E., a minor, by and through his guardian ad litem, LAURA HUTCHINSON-ESCOBEDO; CHRISTOPHER ESCOBEDO; and LAURA HUTCHINSON-ESCOBEDO**<br><br>**Plaintiffs**<br><br>v.<br><br>**NORRIS SCHOOL DISTRICT,**<br><br>**Defendant** | CASE NO. 1:20-CV-1291 AWI JLT<br><br>ORDER RE: MOTION FOR TEMPORARY RESTRAINING ORDER<br><br><br>(Doc. 5) |

## I. Background

Plaintiff E.E. is 7 years old and has been diagnosed with Autism Spectrum Disorder. Plaintiffs Laura Hutchinson-Escobedo and Christopher Escobedo ("Parents") are E.E.'s parents. Plaintiffs live in Bakersfield, CA, within the boundaries of Defendant Norris School District ("NSD"). E.E. started attending kindergarten at Norris Elementary in August 2018. E.E.'s original Individualized Education Plan ("Original IEP") allowed E.E. to take part in a general education classroom for 98% of the time with 2% of his time spent on speech and language services. The Parents agreed to the Original IEP and it was implemented starting on November 27, 2018 and ending on November 27, 2019. Starting in February 2019, E.E. began to engage in physically aggressive behaviors towards teachers, staff, and other students; E.E. was himself hurt by physically aggressive behaviors other students directed at him. The Parents sought to have a trained behavior aide added to the classroom and the playground, but the request was not granted.

On January 22, 2020, the NSD offered a new Individualized Education Plan ("New IEP").

The NSD sought to move E.E. to Bimat Elementary and to place him into a special day class with a trained behavior aide instead of a general education classroom. The Parents did not agree to the New IEP. On January 14, 2020, the Parents filed a due process complaint against the NSD. The Parents alleged that NSD denied E.E. a free appropriate public education ("FAPE") under the Individuals with Disabilities Education Act ("IDEA"). This became the California Office of Administrative Hearings Case Number 2020010423. On June 4, 2020, the NSD filed its own due process complaint against the Parents. The two cases were consolidated. A hearing was held before Administrative Law Judge Adrienne Krikorian over 7 days in July 2020. On September 2, 2020, Judge Krikorian ruled in favor of the Parents in part and the NSD in part. Of concern to this motion, Judge Krikorian ruled that the NSD could implement the New IEP over the Parents' objections.

The NSD has made preparations to move E.E. from Norris Elementary to Bimat Elementary. Plaintiffs' counsel has contacted counsel for the NSD to invoke the "stay put" doctrine to keep E.E. at Norris Elementary under the terms of the Original IEP pending appeal. The NSD indicated that it would move forward with implementing the New IEP starting on September 14, 2020. On September 10, 2020, Plaintiffs have filed suit in this case seeking review of Judge Krikorian's decision to approve the New IEP. Plaintiffs then filed a motion for a temporary restraining order ("TRO") to keep E.E. at Norris Elementary under the Original IEP.

## II. Legal Standards

Federal Rule of Civil Procedure 65 governs preliminary injunctions and temporary restraining orders. The substantive standard for issuing a temporary restraining order and a preliminary injunction are "substantially identical." Kindred v. Bigot, 727 F. App'x 427, 427 (9th Cir. 2018), citing Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n.7 (9th Cir. 2001). A plaintiff seeking a preliminary injunction must establish: (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). "We evaluate these

factors via a 'sliding scale approach,' such that 'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest.'" Arc of Cal. v. Douglas, 757 F.3d 975, 983 (9th Cir. 2014), quoting Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 and 1135 (9th Cir. 2011). "Injunctive relief...must be tailored to remedy the specific harm alleged." Park Vill. Apt. Tenants Ass'n v. Mortimer Howard Trust, 636 F.3d 1150, 1160 (9th Cir. 2011).

### III. Discussion

Procedurally, a party must comply with Local Rule 231 when making a motion for a TRO. Plaintiffs in this case appear to have satisfied all of those requirements.

When there is a dispute between an education agency and parents of a student over the terms of an IEP, the IDEA allows for either party to request a due process hearing. 20 U.S.C. § 1415(f). The results of the administrative procedures may be appealed by either party in state or federal court. 20 U.S.C. § 1415(i)(2). Pending a final resolution, IDEA specifies that the student should remain in the existing educational placement. The statute states, "Except as provided in subsection (k)(4) [dealing with a change of placement due to a violation of a code of student conduct], during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child…" 20 U.S.C. § 1415(j). The implementing regulations state even more clearly "Except as provided in § 300.533 [dealing with a change of placement due to a violation of a code of student conduct], during the pendency of any **administrative or judicial proceeding** regarding a due process complaint notice requesting a due process hearing under § 300.507, unless the State or local agency and the parents of the child agree otherwise, the child involved in the complaint must remain in his or her current educational placement." 34 CFR 300.518(a), emphasis added. Allowing the student to remain in their existing placement is "commonly referred to as the 'stay put' provision." Johnson v. Special Educ. Hearing Office, 287 F.3d 1176, 1179 (9th Cir. 2002).

"A motion for stay put functions as an 'automatic' preliminary injunction, meaning that the moving party need not show the traditionally required factors (e.g., irreparable harm) in order to obtain preliminary relief." Joshua A. v. Rocklin Unified Sch. Dist., 559 F.3d 1036, 1037 (9th Cir. 2009), citing Drinker ex rel. Drinker v. Colonial Sch. Dist., 78 F.3d 859, 864 (3d Cir. 1996). Indeed, the standard is functionally reversed: "The [stay put] preference may be overcome through the issuance of a preliminary injunction if the equitable factors traditionally used by courts to evaluate requests for interim injunctive relief favor a change in the child's placement." Henry v. Sch. Admin. Unit 29, 70 F. Supp. 2d 52, 58 (D.N.H. 1999), citing Honig v. Doe, 484 U.S. 305, 327 (1988); Johnson, 287 F.3d at 1180 ("To enjoin a 'stay put' order, a litigant must demonstrate either '(1) a combination of probable success and the possibility of irreparable harm, or (2) that serious questions are raised and the balance of hardship tips in [his] favor.'").  The rationale for favoring the stay put option is that "there is a heightened risk of irreparable harm inherent in the premature removal of a disabled child to a potentially inappropriate educational setting. In light of this risk, the stay put provision acts as a powerful protective measure to prevent disruption of the child's education throughout the dispute process." Joshua A., 559 F.3d at 1040.

The Ninth Circuit has described the "current educational placement" as "typically the placement described in the child's most recently implemented IEP." Johnson, 287 F.3d at 1180; Joshua A., 559 F.3d at 1037.  From the facts presented, that would be the Original IEP.  Though it was to have ended in November 2019, it appears to have remained the operative IEP due to the lack of agreement between the Parents and the NSD on the terms of a revised IEP.

In limited circumstances, "A court-approved placement can also be considered the student's 'current educational placement.'" L.M. v. Capistrano Unified Sch. Dist., 538 F.3d 1261, 1270 (9th Cir. 2008), citing Mackey v. Bd of Educ., 386 F.3d 158, 163 (2d Cir. 2004).  The cases that have come to this conclusion were ones in which the administrative or judicial ruling favored the parents against the local educational agency. See Sch. Comm. of Burlington v. Dep't of Educ., 471 U.S. 359, 372 (1985); Clovis Unified Sch. Dist. v. Cal. Office of Admin. Hearings, 903 F.2d 635, 640 (9th Cir. 1990); Mackey, 386 F.3d at 163.  This line of reasoning followed IDEA implementing regulations which state that "If the hearing officer in a due process hearing

conducted by the SEA or a State review official in an administrative appeal agrees with the child's parents that a change of placement is appropriate, that placement must be treated as an agreement between the State and the parents for the purposes of paragraph (a) of this section." 34 CFR 300.518(d).  When there is an agreement, the parties may deviate from the current educational placement. 34 CFR 300.518(a).  Thus, parents could proceed under the terms of the favorable ruling while the case overall was appealed.  The courts deemed the favorable ruling to be the new current educational placement.  In the case at hand, the administrative ruling was in favor of the NSD.  Thus, the Original IEP should be considered the current educational placement.

When the stay put provision is being enforced by injunction, no bond is necessary. See District of Columbia v. Vinyard, 901 F. Supp. 2d 77, 91 (D.D.C. 2012).

## IV. Order

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiffs' motion for temporary restraining order is GRANTED.

2. Defendant NSD is TEMPORARILY RESTRAINED from implementing the IEP formulated on January 22, 2020.  The NSD must, as best as possible, continue to implement the IEP formulated on November 27, 2018.

3. This order will expire in 14 days after entry.

4. This order is deemed to issue at 4:00 PM on Tuesday, September 15, 2020.

5. Pursuant to Local Rule 231(c)(8), if the NSD so chooses, it may apply for modification or dissolution of this temporary restraining order on 2 days notice.

6. A telephonic hearing on whether a preliminary injunction should issue will be held at 10:00 AM on Monday, September 28, 2020

7. The NSD shall file either an opposition or notice on non-opposition to the granting of a preliminary injunction by 4:00 PM on Monday, September 21, 2020.

8. Plaintiffs shall file a reply by 4:00 PM on Friday, September 25, 2020.

9. Plaintiffs shall serve a true and correct copy of this order on the NSD and file proof of service within 24 hours.

IT IS SO ORDERED.

Dated: September 15, 2020

_____
SENIOR DISTRICT JUDGE