# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **E.E., a minor, by and through his guardian ad litem, LAURA HUTCHINSON-ESCOBEDO; CHRISTOPHER ESCOBEDO; and LAURA HUTCHINSON-ESCOBEDO** | **CASE NO. 1:20-CV-1291 AWI JLT**<br><br>**ORDER RE: MOTION FOR PRELIMINARY INJUNCTION** |
| **Plaintiffs** | |
| **v.** | |
| **NORRIS SCHOOL DISTRICT,** | |
| **Defendant** | |

## I. Background

Plaintiff E.E. is 7 years old and has been diagnosed with Autism Spectrum Disorder. Plaintiffs Laura Hutchinson-Escobedo and Christopher Escobedo ("Parents") are E.E.'s parents. Plaintiffs live in Bakersfield, CA, within the boundaries of Defendant Norris School District ("NSD"). E.E. started attending kindergarten at Norris Elementary in August 2018. E.E.'s original Individualized Education Plan ("Original IEP") allowed E.E. to take part in a general education classroom for 98% of the time with 2% of his time spent on speech and language services. The Parents agreed to the Original IEP and it was implemented starting on November 27, 2018 and ending on November 27, 2019. Starting in February 2019, E.E. began to engage in physically aggressive behaviors towards teachers, staff, and other students; E.E. was himself hurt by physically aggressive behaviors other students directed at him. The Parents sought to have a trained behavior aide added to the classroom and the playground, but the request was not granted. The parties met in March 2019 to discuss a new IEP. It does not appear that a new IEP was

1   implemented at that time.  The Old IEP remained in effect.  The parties met again in June and

2   August 2019 without modifying the Old IEP.  E.E. took part in an Extended School Year ("ESY")

3   program during the summer of 2019.

4           The parties met on November 21, 2019 to discuss a new IEP.  There was prolonged

5   discussion and on January 22, 2020, the NSD offered a new Individualized Education Plan ("New

6   IEP").  The NSD sought to move E.E. to Bimat Elementary and to place him into a special day

7   class with a trained behavior aide instead of a general education classroom.  The Parents did not

8   agree to the New IEP.  On January 14, 2020, the Parents filed a due process complaint against the

9   NSD.  The Parents alleged that NSD denied E.E. a free appropriate public education ("FAPE")

10  under the Individuals with Disabilities Education Act ("IDEA").  This became the California

11  Office of Administrative Hearings ("OAH") Case Number 2020010423.  On June 4, 2020, the

12  NSD filed its own due process complaint against the Parents.  The two cases were consolidated.  A

13  hearing was held before Administrative Law Judge Adrienne Krikorian over 7 days in July 2020.

14          On September 2, 2020, Judge Krikorian issued her ruling ("OAH Decision"), finding in

15  favor of the Parents in part and the NSD in part.  Judge Krikorian found that the NSD denied E.E.

16  a FAPE between November 27, 2018 and January 22, 2020 due to its inadequate implementation

17  of the Old IEP as written.  Due to the COVID-19 pandemic, the NSD sent students home for

18  distance learning from March 18 through May 7, 2020.  Additionally, E.E. took part in an ESY

19  program during summer 2020.  Judge Krikorian found that the NSD denied E.E. a FAPE because

20  the NSD did not provide special education and related services to E.E. to the extent possible given

21  the circumstances.  Judge Krikorian also ruled that the New IEP would provide a FAPE to E.E.

22  and that NSD could implement the New IEP over the Parents' objections.  Judge Krikorian

23  specifically stated that "The January 22, 2020 IEP, as it may be amended, shall constitute

24  Student's 'stay put' under title 20 United States Code section 1415(j)[] until Parents consent to a

25  new amendment or annual IEP, or as otherwise ordered by OAH or other tribunal." Doc. 1-1, page

26  69.

27          The new school year started in August 2020.  The NSD made preparations to move E.E.

28  from Norris Elementary to Bimat Elementary starting September 14, 2020.  On September 10,

2

1   2020, Plaintiffs filed suit in this case seeking review of the part of the OAH Decision that

2   approved the New IEP.  Plaintiffs filed a motion for a temporary restraining order ("TRO") to

3   keep E.E. at Norris Elementary under the Original IEP.  The TRO was granted.  Doc. 8.  The

4   parties filed briefing regarding a preliminary injunction.  At the hearing on September 28, 2020,

5   the NSD argued a new theory and additional briefing was ordered.  A second hearing was held on

6   October 2, 2020.

7

8                              **II. Legal Standards**

9        Federal Rule of Civil Procedure 65 governs preliminary injunctions and temporary

10   restraining orders.  The substantive standard for issuing a temporary restraining order and a

11   preliminary injunction are "substantially identical." Kindred v. Bigot, 727 F. App'x 427, 427 (9th

12   Cir. 2018), citing Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n.7 (9th

13   Cir. 2001).  A plaintiff seeking a preliminary injunction must establish: (1) that he is likely to

14   succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary

15   relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public

16   interest. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).  "We evaluate these

17   factors via a 'sliding scale approach,' such that 'serious questions going to the merits' and a

18   balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary

19   injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and

20   that the injunction is in the public interest.'" Arc of Cal. v. Douglas, 757 F.3d 975, 983 (9th Cir.

21   2014), quoting Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 and 1135 (9th Cir.

22   2011).  "Injunctive relief...must be tailored to remedy the specific harm alleged." Park Vill. Apt.

23   Tenants Ass'n v. Mortimer Howard Trust, 636 F.3d 1150, 1160 (9th Cir. 2011).

24

25                              **III. Discussion**

26        When there is a dispute between an education agency and parents of a student over the

27   terms of an IEP, the IDEA allows for either party to request a due process hearing. 20 U.S.C. §

28   1415(f).  The results of the administrative procedures may be appealed by either party in state or

1      federal court. 20 U.S.C. § 1415(i)(2).  Pending a final resolution, IDEA specifies that the student

2      should remain in the existing educational placement.  The statute states, "Except as provided in

3      subsection (k)(4) [dealing with a change of placement due to a violation of a code of student

4      conduct], during the pendency of any proceedings conducted pursuant to this section, unless the

5      State or local educational agency and the parents otherwise agree, the child shall remain in the

6      then-current educational placement of the child…" 20 U.S.C. § 1415(j).  The implementing

7      regulations state even more clearly "Except as provided in § 300.533 [dealing with a change of

8      placement due to a violation of a code of student conduct], during the pendency of any

9      administrative or judicial proceeding regarding a due process complaint notice requesting a due

10      process hearing under § 300.507, unless the State or local agency and the parents of the child

11      agree otherwise, the child involved in the complaint must remain in his or her current educational

12      placement." 34 CFR 300.518(a).  Allowing the student to remain in their existing placement is

13      "commonly referred to as the 'stay put' provision." Johnson v. Special Educ. Hearing Office, 287

14      F.3d 1176, 1179 (9th Cir. 2002).  The rationale for favoring the stay put option is that "there is a

15      heightened risk of irreparable harm inherent in the premature removal of a disabled child to a

16      potentially inappropriate educational setting. In light of this risk, the stay put provision acts as a

17      powerful protective measure to prevent disruption of the child's education throughout the dispute

18      process." Joshua A. v. Rocklin Unified Sch. Dist., 559 F.3d 1036, 1040 (9th Cir. 2009).

19

20      **A. Current Educational Placement**

21          The parties disagree as to what legally constitutes E.E.' s current educational placement.

22      Plaintiffs assert it is the general education program at Norris Elementary, following the Old IEP.

23      The NSD asserts it is the special day class at Bimat Elementary, following the New IEP.  The

24      Ninth Circuit has described the "current educational placement" as "typically the placement

25      described in the child's most recently implemented IEP." Johnson, 287 F.3d at 1180; Joshua A.,

26      559 F.3d at 1037.  There is some clarification that this is "the placement described in the child's

27      last implemented IEP, not the last placement to which the Parents agreed." N.E. v. Seattle Sch.

28      Dist., 2015 U.S. Dist. LEXIS 182203, *10 n.4 (W.D. Wash. Oct. 27, 2015).

The Old IEP was implemented in November 2018 and has not been superseded by another. For the entire period of dispute between the parties, E.E. has been placed in general education classes at Norris Elementary.  The paradigmatic application of the stay put provision is one where "a school district attempts to change a student's placement, the student objects to the change by filing an administrative complaint, and stay put maintains the placement until the dispute ends." A.D. v. State Dep't of Educ., 727 F.3d 911, 914 (9th Cir. 2013).  Based on this straightforward interpretation of the law, remaining at Norris Elementary is the stay put default placement.

The NSD makes a number of arguments in opposition to this conclusion.  First, Judge Krikorian in the OAH Decision termed the New IEP as the "stay put" placement moving forward. Doc. 1-1, page 69.  This decision would seem to make the special day class at Bimat Elementary the new stay put placement.  As Plaintiffs point out, parties in an OAH case can make a motion for a stay put placement to the ALJ. See D.P. ex rel. Chang v. Chino Valley Unified Sch. Dist., 2013 U.S. Dist. LEXIS 190010, *3 (C.D. Cal. Sep. 4, 2013).  There is no indication that any such motion was made in the OAH process in this case.  Plaintiffs' counsel represents that the issue of which IEP should be the stay put placement was never raised, briefed, or argued by any of the parties as part of the OAH case. Doc. 14, 1:28-2:20.  The NSD has made no representation to the contrary.  The OAH Decision stated that the New IEP would be the stay put placement without any analysis or explanation.  The OAH Decision does not appear to have considered what the "then-current educational placement" language of 20 U.S.C. § 1415(f) means.  In fact, the OAH Decision acknowledged that the Old IEP was the last one that was implemented for E.E.: "The November 27, 2018 IEP remained Student's operative IEP until May 7, 2020." Doc. 1-1, page 7. The new school year has just begun and the New IEP has never been implemented; E.E. continued to attend Norris Elementary (albeit taking part in distance learning) through the time the request for temporary restraining order was filed.  Notwithstanding the language of the OAH Decision, the Old IEP remains the "most recently implemented IEP."  Consistent with the Ninth Circuit's definition of the term, the stay put placement will default to the Old IEP, not the New IEP.

Second, the NSD argues that even discounting the wording of the OAH Decision, Judge Krikorian's ruling finding the Old IEP inadequate and the New IEP FAPE compliant means that

1   the New IEP must be the basis for the stay put placement.  Because the Plaintiffs argued that the

2   Old IEP did not provide a FAPE, the NSD construes the ruling as an agreement between the ALJ

3   and Parents to change the stay put placement. Doc. 17, page 5.  The statute states, "during the

4   pendency of any proceedings conducted pursuant to this section, unless the State or local

5   educational agency and the parents otherwise agree, the child shall remain in the then-current

6   educational placement of the child…" 20 U.S.C. § 1415(j).  In limited circumstances, "A court-

7   approved placement can also be considered the student's 'current educational placement.'" L.M. v.

8   Capistrano Unified Sch. Dist., 538 F.3d 1261, 1270 (9th Cir. 2008), citing Mackey v. Bd of Educ.,

9   386 F.3d 158, 163 (2d Cir. 2004).  The cases that have come to this conclusion were ones in which

10  the administrative or judicial ruling favored the parents against the local educational agency. See

11  Sch. Comm. of Burlington v. Dep't of Educ., 471 U.S. 359, 372 (1985); Clovis Unified Sch. Dist.

12  v. Cal. Office of Admin. Hearings, 903 F.2d 635, 640 (9th Cir. 1990); Mackey, 386 F.3d at 163.

13  This line of reasoning followed IDEA implementing regulations which state that "If the hearing

14  officer in a due process hearing conducted by the SEA or a State review official in an

15  administrative appeal agrees with the child's parents that a change of placement is appropriate,

16  that placement must be treated as an agreement between the State and the parents for the purposes

17  of paragraph (a) of this section." 34 CFR 300.518(d).  When there is an agreement, the parties may

18  deviate from the current educational placement. 34 CFR 300.518(a).  Thus, parents could proceed

19  under the terms of the favorable ruling while the case overall was appealed.  The courts deemed

20  the favorable ruling to be the new current educational placement.

21          In the OAH case, Plaintiffs asserted that the Old IEP was insufficient; Judge Krikorian

22  agreed and ruled in their favor on this point.  The NSD interprets this ruling as sufficient to

23  constitute an agreement under Section 1415(j) to change the stay put placement.  While there was

24  agreement that the Old IEP as implemented was not sufficient, there was no agreement between

25  the Parents and Judge Krikorian as to what to do moving forward.  In the case at hand, the OAH

26  Decision imposing the New IEP was a ruling in favor of the NSD.  The Ninth Circuit summarized

27  the law as follows: "once the State educational agency decided that the parents' placement was the

28  appropriate placement, it became the 'then current educational placement' within the meaning of

6

1   section 1415(e)(3)." <u>Clovis Unified Sch. Dist. v. Cal. Office of Admin. Hearings</u>, 903 F.2d 635,

2   641 (9th Cir. 1990), citing <u>School Committee of the Town of Burlington v. Massachusetts</u>

3   <u>Department of Education</u>, 471 U.S. 359, 372-73 (1985).  Here, critically, the ALJ did not find that

4   the Plaintiffs' proposal for the future was the appropriate placement.  The regulatory language

5   requires them to agree that "a change of placement is appropriate." 34 CFR 300.518(d).  Thus, this

6   provision does not apply.

7       Third, the NSD makes a related argument that as a matter of public policy, an IEP that has

8   been found by an ALJ to deny a student a FAPE should never be given stay put status.  The NSD

9   cites to <u>Clovis Unified Sch. Dist. v. Cal. Office of Admin. Hearings</u>, 903 F.2d 635 (9th Cir. 1990)

10  in written briefing and orally at the hearing for the proposition that only placements an ALJ finds

11  to provide a FAPE can be stay put placements. Doc. 12, 15:18-22.  Specifically, the NSD states

12  that the Ninth Circuit's view is that stay put placements only apply "after the administrative

13  decision that the placement was appropriate, and until a court directed otherwise." <u>Clovis</u>, 903

14  F.2d at 640.  This is a misinterpretation of the law.  The Ninth Circuit was describing the

15  exception to the stay put provision when an ALJ rules in favor of the parents: "once the State

16  educational agency decided that the parents' placement was the appropriate placement, it became

17  the 'then current educational placement.'" <u>Id.</u> at 641.  As already described above, this exception

18  does not apply in this case.

19      More generally, the NSD cites to the Sixth Circuit for the proposition that "the 'stay put'

20  rule is not designed to prolong 'the current educational placement' unless there is a genuine

21  appealable issue that 'the current educational placement' is the appropriate placement under the

22  Act and should not be changed." <u>Tenn. Dep't of Mental Health & Mental Retardation v. Paul B.</u>,

23  88 F.3d 1466, 1474 (6th Cir. 1996).  In that case, the school proposed changing the child's

24  placement.  The parent was not informed that he could challenge the invocation of the stay put

25  option pending resolution if he wanted to challenge that proposed IEP; instead, he consented to

26  and signed the IEP. <u>Id.</u> at 1469-70.  Afterwards, he claimed that his decisions regarding the

27  placement would have been different had been informed of the stay put rights. <u>Id.</u> at 1472.  The

28  parent sued based on that procedural defect.  The key language from the Sixth Circuit is that "the

1   'stay put' provision is activated only when a parent alleges that there has been a substantive

2   violation of the Act." Id. at 1473.  This substantive-procedural dichotomy is also raised by another

3   case the NSD cites to, A.R. v. Dep't of Educ., 2011 U.S. Dist. LEXIS 36291 (D. Haw. Mar. 31,

4   2011).  In A.R., the parent made a solely procedural objection to the IEP: "The appeal is based

5   solely on the untimeliness of the IEP. That is, Joshua's mother argues that untimeliness, as a per se

6   violation of the IDEA, automatically makes the DOE liable to her. She does not challenge the

7   content of the IEP or contest the factual finding in the Decision that she caused the delay in the

8   issuance of the IEP." Id. at *2.  The court explained that "Violations of the IDEA may arise in two

9   situations. First, a school district, in creating and implementing an IEP, may run afoul of the

10  IDEA's procedural requirements. Second, a school district may become liable for a substantive

11  violation of the IDEA by drafting an IEP that is not reasonably calculated to enable the child to

12  receive educational benefits." Id. at *6.  The court ultimately adopted the rule that "a parent is not

13  entitled to relief under the 'stay put' provision based on a procedural defect that the parent has

14  indisputably caused." Id. at *31.

15        As Plaintiffs explain, "These cases stand for the unremarkable proposition that the right to

16  stay put does not apply where the parents do not actually contend that the district's proposed new

17  placement is substantively inappropriate." Doc. 13, 5:6-9.  The situation regarding E.E.'s

18  placement does not fall into that category.  Plaintiffs assert that the New IEP constitutes a

19  substantive violation of the IDEA.  Judge Krikorian's ruling does state that "Student contends the

20  January 22, 2020 IEP did not offer FAPE, particularly in the areas of goals, behavior, and

21  occupational therapy." Doc. 1-1, page 36.  As for the NSD's point that Plaintiffs brought a

22  complaint originally because they felt the Old IEP did not provide a FAPE, Plaintiffs cite to the

23  First Circuit which counseled that "the stay-put placement was merely the lesser of two evils"

24  when parents believe both the existing and proposed IEPs are inadequate. Me. Sch. Admin. Dist.

25  No. 35 v. R., 321 F.3d 9, 19 (1st Cir. 2003).  The First Circuit noted that the parents requested and

26  the district court imposed the current educational placement as the stay put even though the

27  parents were attacking that very same placement for being "ineffective and frustrating." Id. at 12.

28  In such a circumstance, the stay put placement is not intended as "relief on the merits" but rather

1   as a temporary situation that provides the student continuity and stability while the legal process

2   plays out. Id. at 19.

3          Fourth, the NSD argues that Plaintiffs' agreement to ESY for E.E. in the summer of 2020

4   constitutes an agreement to implementing the New IEP. Doc. 17, pages 1-2.  The NSD believes

5   that this makes the New IEP the last implemented placement, making it the stay put.  The NSD

6   cites to J.E. v. Boyertown Area Sch. Dist., 807 F. Supp. 2d 236 (E.D. Pa. 2011) as illustrative of

7   how an agreement can supersede an earlier placement.  In J.E., the parents wished for the student

8   to continue studying at a private school while the school district wished to start a transition to

9   public school.  The district court found in favor of the school district and ordered that "the parties

10  shall file an agreed upon transition plan...If the parties cannot agree on a transition plan for J.E.,

11  each party shall file a proposed transition plan…for the Court to decide." Id. at 241.  Though the

12  parents later appealed the decision to the Third Circuit, the district court found that they had

13  agreed to a change in the stay put placement because "Plaintiffs engaged in discussions with the

14  School District to create a Joint Transition Plan. They further submitted the plan to the Court as

15  one agreed to between the parties without qualifying their agreement or making any reference to

16  an actual intent of not following the plan." Id. at 241.  Because the parents agreed to transition the

17  student to public school, public school became the new stay put placement.  Similarly, in another

18  case, the Ninth Circuit found that passive acquiescence to an IEP without active disagreement or

19  challenge would constitute acceptance of the IEP. N.E. v. Seattle Sch. Dist., 842 F.3d 1093, 1095

20  (9th Cir. 2016) (after writing "disagree" on an earlier draft, "Plaintiffs received that IEP

21  approximately one week later, along with a prior written notice notifying Plaintiffs that the

22  Bellevue School District intended to alter N.E.'s educational placement and that the individual

23  class would serve as a transition to the self-contained class. Plaintiffs did not file an administrative

24  due process challenge to the May 2015 IEP and, instead, allowed N.E. to attend the individual

25  class until the end of the school year").

26          E.E. took part in ESY during the summer of 2020.  The NSD argues the New IEP

27  consisted of two integrated stages of implementation: ESY in the summer of 2020 and special day

28  class at Bimat Elementary starting in the fall of 2020. Doc. 17, page 7.  By accepting ESY for the

summer of 2020, the NSD believes that Plaintiffs began implementation of the New IEP.  To

buttress this view of events, the NSD points out that "at an IEP meeting held on September 14,

2020, the parties made substantial progress in this regard by agreeing to incorporate some of the

goals from the New IEP. Doc. 17, page 2.

Plaintiffs disagree with this characterization of events.  First, Plaintiffs rejects the

characterization of the New IEP as having two stages of implementation.  They assert that the

New IEP only consists of special day class at Bimat Elementary and does not include any plans for

ESY in the summer of 2020.  An examination of the 20 page New IEP reveals that the only

mention of ESY is in some handwritten notes describing what happened at a meeting between the

parties on January 22, 2020.  The notes state: "B. Foster asked if all testing to get to know him

best. Review of what was proposed for next year. ESY – Mother wants him to attend.

Transportation – placement offer allows for curb to curb service curb to Bimat and home if

needed." Doc. 17-1, pages 15c-15d.  Plaintiffs contrast this with the Old IEP which clearly does

include ESY.  The Old IEP included two pages of preprinted material entitled "Extended School

Year" and Extended School Year Services" which described what ESY E.E. was to have in the

summer of 2019. Doc. 6-1, pages 9-10.  As the Old IEP continued to be implemented even after its

planned end date, Plaintiffs argue that ESY in the summer of 2020 was a continuation of the Old

IEP.  Plaintiffs assert that they agreed to ESY in June 2020 but did not agree to special day class in

the new school year: "Parents had not consented to the implementation of any part of the January

22, 2020 IEP – including ESY services – at the time E.E. received ESY services during the

summer of 2020." Doc. 18, page 5.

In the OAH Decision, the only relevant notation was that "Mother confirmed in an email

on May 5, 2020, that Student would participate in extended school year." Doc. 1-1, page 58.  In

the OAH Decision, Judge Krikorian discussed the New IEP as placing E.E. in the SDC (Doc. 1-1,

page 42) but made no mention of the New IEP providing for ESY in the summer of 2020.  Indeed,

Judge Krikorian noted that the Old IEP provided for ESY during the summer of 2019. Doc. 1-1,

page 7.  Further, Plaintiffs state that "As recently as the IEP meeting on September 14, 2020,

undersigned counsel made it abundantly clear that Parents were not going to agree to any change

1    in E.E.'s placement." Doc. 18 page 3.  They emphasize that "While Parents did have a discussion

2    with the IEP team about temporarily implementing some of the newer goals from the NEW IEP,

3    pending a ruling from this Court on the Plaintiffs' preliminary injunction motion, those goals do

4    not have any impact on E.E.'s 'placement.'" Doc. 18, page 2.  Taken altogether, it does not appear

5    that the Plaintiffs agreed to ESY as part of the New IEP.  From what the parties have presented,

6    ESY for E.E. during the summer of 2020 was separately agreed to by the Parents or was a

7    continuation of the Old IEP.  There was no agreement to implement the New IEP; the Old IEP

8    remained the stay put placement.

9

10   **B. Preliminary Injunction**

11          "A motion for stay put functions as an 'automatic' preliminary injunction, meaning that the

12   moving party need not show the traditionally required factors (e.g., irreparable harm) in order to

13   obtain preliminary relief." Joshua A. v. Rocklin Unified Sch. Dist., 559 F.3d 1036, 1037 (9th Cir.

14   2009), citing Drinker ex rel. Drinker v. Colonial Sch. Dist., 78 F.3d 859, 864 (3d Cir. 1996).

15   Indeed, the standard is functionally reversed: "The [stay put] preference may be overcome through

16   the issuance of a preliminary injunction if the equitable factors traditionally used by courts to

17   evaluate requests for interim injunctive relief favor a change in the child's placement." Henry v.

18   Sch. Admin. Unit 29, 70 F. Supp. 2d 52, 58 (D.N.H. 1999), citing Honig v. Doe, 484 U.S. 305,

19   327 (1988); Johnson, 287 F.3d at 1180 ("To enjoin a 'stay put' order, a litigant must demonstrate

20   either '(1) a combination of probable success and the possibility of irreparable harm, or (2) that

21   serious questions are raised and the balance of hardship tips in [his] favor.'").  To clarify, this

22   special shifting of the burden applies only to a motion seeking to impose the stay put provision in

23   the first instance; it does not apply when a stay put injunction has already been issued and a party

24   makes a motion seeking a modification. S.A. v. Exeter Union Sch. Dist., 2010 U.S. Dist. LEXIS

25   124828, *44 (E.D. Cal. Nov. 24, 2010).  As has been explained above, the Old IEP which put E.E.

26   in general education at Norris Elementary is the stay put placement.

27          The NSD argues that the stay put provision preventing a change in placement should not

28   be automatic: "an order from a due process hearing held under IDEA is not automatically stayed

                                                    11

1  when an aggrieved party files an appeal." Doc. 12, 8:14-16.  The NSD cites to <u>Tamalpais Union</u>

2  <u>High Sch. Dist. v. D.W.</u>, 2016 U.S. Dist. LEXIS 137971 (N.D. Cal. Oct. 4, 2016) as an example.

3  However, that case dealt with an order to reimburse the parents of a student for private school

4  tuition already paid. <u>Tamalpais</u>, 2016 U.S. Dist. LEXIS 137971 at *13.  In fact, the Northern

5  District specifically contrasted a general ruling by an ALJ with a ruling on student placement: "if

6  Congress meant to provide that underlying administrative decisions are automatically stayed and

7  unenforceable pending appeal, it could say so expressly. For example, Congress did include an

8  automatic stay provision in the procedural safeguards section of IDEA, but that section does not

9  facially apply to appeals of administrative decisions. Known as the 'stay put' provision….There is

10  no similar automatic stay provision that applies to final orders of state educational agencies." <u>Id.</u> at

11  *24-25.  The presumption is that a ruling changing a student's placement is stayed pending appeal.

12        The burden is on the NSD to show (1) that he is likely to succeed on the merits, (2) that he

13  is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of

14  equities tips in his favor, and (4) that an injunction is in the public interest. <u>Winter v. Natural Res.</u>

15  <u>Def. Council, Inc.</u>, 555 U.S. 7, 20 (2008).  Regarding the likelihood of suffering irreparable harm

16  prong, the NSD says there are three forms of irreparable harm it would suffer: (1) it would be

17  prohibited from providing a FAPE to E.E., (2) state funding to NSD could be withheld for its

18  failure to follow an OAH order, and (3) E.E. will suffer irreparable harm from not receiving a

19  FAPE. Doc. 12, 11:17-12:18.

20        The first and third categories are linked.  They are both based on the idea that the Old IEP

21  does not provide a FAPE and so will cause irreparable injury if the NSD is forced to continue

22  implementing it.  Even if the court were to accept that the New IEP provides a FAPE while the

23  Old IEP does not, enforcing the New IEP is not the only solution.  There are other ways of

24  providing a FAPE other than the New IEP.  This court notes that part of Judge Krikorian's

25  conclusion was that "Norris did not implement the November 27, 2018 IEP as written….Student

26  proved Norris failed to materially implement the IEP." Doc. 1-1, page 9.  The NSD could try to

27  correct the problems identified in the OAH Decision and better implement the Old IEP.  As

28  discussed above, the stay put provision also allows the parties to change the placement based on

mutual agreement. 20 U.S.C. § 1415(j).  "The stay-put provision was never intended to suspend or otherwise frustrate the ongoing cooperation of parents and the school district to reach an amenable resolution of a disagreement over educational services." C.H. v. Cape Henlopen Sch. Dist., 606 F.3d 59, 72 (3d Cir. 2010).

The second form of irreparable harm has not been supported by adequate proof.  The NSD says "the California Department Education ('CDE') requires that any OAH order be implemented or a district could face consequences such as withholding of funds." Doc. 12, 12:4-6.  The danger is that the CDE "could" take action which might (or might not) take the form of "withholding of funds."  No enforcement action has been threatened.  This does not rise to the level of showing that the NSD is likely to suffer irreparable harm.  Additionally, in granting injunctions in the IDEA context, district courts have directly stated that they have the power and inclination to directly enjoin the CDE if it attempts to enforce OAH orders that conflict with court orders. See Tamalpais, 2016 U.S. Dist. LEXIS 137971 at *42-43.  The NSD has not met its burden of showing that there is a likelihood of irreparable injury.  The preliminary injunction analysis weighs in favor of keeping the stay put placement

## IV. Order

Plaintiffs' motion for injunctive relief is GRANTED.

Defendant NSD is ENJOINED from implementing the IEP formulated on January 22, 2020.  The NSD is ORDERED to continue to implement, as best as possible, the IEP formulated on November 27, 2018 unless the NSD and the Plaintiffs come to an agreement on a new placement for E.E.

IT IS SO ORDERED.

Dated:  __October 5, 2020__          _____

                                SENIOR  DISTRICT  JUDGE