**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **E.E., a minor, by and through his guardian ad litem, LAURA HUTCHINSON-ESCOBEDO; CHRISTOPHER ESCOBEDO; and LAURA HUTCHINSON-ESCOBEDO** | **CASE NO. 1:20-CV-1291 AWI JLT** |
| | **ORDER RE: MOTIONS TO DISMISS** |
| **Plaintiffs** | |
| v. | **(Docs. 24 and 40)** |
| **NORRIS SCHOOL DISTRICT,** | |
| **Defendant** | |

**I. Background**

Plaintiff E.E. is a minor who has been diagnosed with Autism Spectrum Disorder. Plaintiffs Laura Hutchinson-Escobedo and Christopher Escobedo ("Parents") are E.E.'s parents. Plaintiffs live in Bakersfield, CA, within the boundaries of Defendant Norris School District ("NSD"). E.E. started attending kindergarten at Norris Elementary in August 2018. E.E.'s original Individualized Education Plan ("Original IEP") allowed E.E. to take part in a general education classroom for 98% of the time with 2% of his time spent on speech and language services. The Parents agreed to the Original IEP and it was implemented starting on November 27, 2018 and ending on November 27, 2019. Starting in February 2019, E.E. began to engage in physically aggressive behaviors towards teachers, staff, and other students; E.E. was himself hurt by physically aggressive behaviors other students directed at him. The Parents sought to have a trained behavior aide added to the classroom and the playground, but the request was not granted. The parties met in March 2019 to discuss a new IEP. It does not appear that a new IEP was

implemented at that time. The Old IEP remained in effect. The parties met again in June and August 2019 without modifying the Old IEP. E.E. took part in an Extended School Year ("ESY") program during the summer of 2019.

The parties met on November 21, 2019 to discuss a new IEP. There was prolonged discussion and on January 22, 2020, the NSD offered a new Individualized Education Plan ("New IEP"). The NSD sought to move E.E. to Bimat Elementary and to place him into a special day class with a trained behavior aide instead of a general education classroom. The Parents did not agree to the New IEP. On January 14, 2020, the Parents filed a due process complaint against the NSD. The Parents alleged that NSD denied E.E. a free appropriate public education ("FAPE") under the Individuals with Disabilities Education Act ("IDEA"). This became the California Office of Administrative Hearings ("OAH") Case Number 2020010423. On June 4, 2020, the NSD filed its own due process complaint against the Parents. The two cases were consolidated. A hearing was held before Administrative Law Judge Adrienne Krikorian over 7 days in July 2020.

On September 2, 2020, Judge Krikorian issued her ruling ("OAH Decision"), finding in favor of the Parents in part and the NSD in part. Judge Krikorian found that the NSD denied E.E. a FAPE between November 27, 2018 and January 22, 2020 due to its inadequate implementation of the Old IEP as written. Due to the COVID-19 pandemic, the NSD sent students home for distance learning from March 18 through May 7, 2020. Additionally, E.E. took part in an ESY program during summer 2020. Judge Krikorian found that the NSD denied E.E. a FAPE because the NSD did not provide special education and related services to E.E. to the extent possible given the circumstances. Judge Krikorian also ruled that the New IEP would provide a FAPE to E.E. and that NSD could implement the New IEP over the Parents' objections. Judge Krikorian specifically stated that "The January 22, 2020 IEP, as it may be amended, shall constitute Student's 'stay put' under title 20 United States Code section 1415(j)[] until Parents consent to a new amendment or annual IEP, or as otherwise ordered by OAH or other tribunal." Doc. 1-1, page 69. E.E. remains a student at Norris Elementary per court injunction. Doc. 50.

Plaintiffs filed suit against NSD seeking judicial review of parts of the OAH Decision, asserting violations of the Americans with Disabilities Act ("ADA"), asserting violations of

2

Section 504 of the Rehabilitation Act ("Section 504"), and seeking attorney's fees and costs. The operative complaint is the First Amended Complaint ("FAC"). Doc. 25. The NSD has filed a counterclaim against Plaintiffs seeking review of parts of the OAH Decision and seeking attorney's fees and costs. Doc. 23. Both parties have filed motions to dismiss. Plaintiffs' seek dismissal of the NSD's request for attorney's fees and costs. Doc. 24. The NSD seeks dismissal of Plaintiffs' ADA and Section 504 claims. Doc. 40.

## II. Legal Standards

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. Rule Civ. Proc. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011); Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir. 2008). In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. Faulkner v. ADT Sec. Servs., 706 F.3d 1017, 1019 (9th Cir. 2013). However, complaints that offer no more than "labels and conclusions" or "a formulaic recitation of the elements of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Wilson v. Hewlett-Packard Co., 668 F.3d 1136, 1145 n. 4 (9th Cir. 2012); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). To avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007). The Ninth Circuit has distilled the following principles from Iqbal and Twombly: (1) to be entitled to the presumption of

truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively; (2) the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation. Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011). In assessing a motion to dismiss, courts may consider documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice. Dichter-Mad Family Partners. LLP v. United States, 709 F.3d 749, 761 (9th Cir. 2013). If a motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made." Henry A. v. Willden, 678 F.3d 991, 1005 (9th Cir. 2012). However, leave to amend need not be granted if amendment would be futile or if the plaintiff has failed to cure deficiencies despite repeated opportunities. Mueller v. Aulker, 700 F.3d 1180, 1191 (9th Cir. 2012); Telesaurus VPC. LLC v. Power, 623 F.3d 998, 1003 (9th Cir. 2010).

**III. Discussion**

**A. Attorney's Fees and Costs**

The NSD has made a request for attorney's fees and costs which the Plaintiffs oppose. The NSD stated that "In May 2000, the parties engaged in negotiations via email and telephone calls. By the end of the discussion, the parties had agreed upon every aspect of the case but Plaintiffs/Counter-defendants rejected the settlement agreement due to a standard confidentiality agreement"; the parties had "agreed to the duration, amount, and type of various services for the Student. The parties had an agreement in principal, but for the confidentiality clause." Doc. 26, 3:14-18 and 4:9-11. On that basis, the NSD in the answer and counterclaim stated "Not only should Counter-Defendant/Plaintiff be enjoined from obtaining attorney's fees, but Counter-Plaintiff/Defendant is hereby asking for reimbursement of the educational agency's attorney's fees." Doc. 23, 18:21-23. The Parents have reasonably interpreted the counterclaim in their briefing as "Defendant Norris School District seeks an award of reasonably attorney's fees against Plaintiffs/Counter-Defendants Christopher Escobedo and Laura Hutchinson-Escobedo under 20

U.S.C. § 1415(i)(3)(B)(i)(III)." Doc. 24-1, 1:25-2:2. The NSD has not disputed the Parents' characterization of the counterclaim. To be clear, this order only addresses the NSD's counterclaim seeking attorney's fees and costs, not the ability of the Parents to seek attorney's fees and costs in this case.

"In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs—….(III) to a prevailing State educational agency or local educational agency against the attorney of a parent, or against the parent, if the parent's complaint or subsequent cause of action was presented for any improper purpose, such as to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation." 20 U.S.C. § 1415(i)(3)(B)(i). The NSD argues that the Parents' "unwillingness to resolve the case over a confidentiality provision amounted to protracting the litigation." Doc. 26, 4:12-14. The Parents have cited to Ninth Circuit precedent in opposition:

> the district court erred in holding that anger is an improper purpose that could justify an award of attorney's fees. Anger is an altogether different motive from those listed in section 1415(i)(3)(B)(i)(III) as improper: 'to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation.' In fact, anger is a legitimate reaction by parties who believe that their rights have been violated or ignored. One of the roles of the adversarial system is to peaceably resolve disputes that give rise to personal animosity by channeling that indignation into a lawful resolution in lieu of feuding or personal violence. So long as the claim raised is not frivolous, and the litigation is not being pursued in order to achieve an illegitimate objective (such as harassment, delay or imposing unnecessary costs on the opposing party), an award of fees under section 1415(i)(3)(B)(i)(III) is not justified.

R.P. v. Prescott Unified Sch. Dist., 631 F.3d 1117, 1127 (9th Cir. 2011). The NSD's logic is that the effect of opposing a confidentiality provision was to prolong the case which satisfies the improper purpose requirement through "unnecessary delay" or "needlessly increase[ing] the cost of litigation." The Ninth Circuit's language suggests instead that Section 1415(i)(3)(B)(i)(III) is only satisfied when there is a fully improper motive rather than an action which has a consequence of prolonging a case. Attorney's fees for an educational agency is only warranted when the direct purpose of the complaint is to harass, delay, or increase costs. The NSD must be able to show intent rather than effect.

In this case, the Parents have the independent purpose of exercising their free speech rights on an issue of public concern. The NSD acknowledges that "Student's mother is a radio

5

personality…Student's mother has previously used her platform to discuss the special education needs of her children." Doc. 26, 4:3-5. The Parents' objection to a confidentiality clause was plainly not done for an improper purpose.

The NSD has cited to a Northern District of California case for the proposition that "The IDEA reflects that a higher standard for fees is demanded when the prevailing party is the educational agency, not the parent, see 20 U.S.C. § 1415(i)(3)(B)(i)(I)-(II)….but this does not address what the standard would be if the attorney for the parent were the prevailing party. (Hawkins v. Berkeley Unified Sch. Dist. (N.D.Ca. Nov. 20, 2008, No. C-07-4206 EMC) 2008 U.S.Dist.LEXIS 94673, at *53, fn.6.)." Doc. 26, 5:6-13. The Hawkins precedent is inapplicable to this case. In Hawkins, the school district had made a counterclaim against the attorneys directly rather than the parent or student Hawkins v. Berkeley Unified Sch. Dist., 2008 U.S. Dist. LEXIS 94673, at *5 (N.D. Cal. Nov. 20, 2008). The attorneys were the prevailing parties on the matter and the court opined that IDEA does not cover attorney's fees owed to attorneys (as opposed to parents). Id. at *50-51. In the counterclaim at issue in this motion, the NSD is seeking attorney's fees from the Parents, a completely different scenario.

However, courts have noted that a counterclaim for attorney's fees does not have any independent effect: "Regardless of whether pled as a remedy or independent claim, neither party is entitled to attorney fees without first prevailing and then filing a separate motion. As such, defendants' fee-related claims merely furnish 'notice that [they] will seek recovery of fees if they prevail' and/or 'establish that [plaintiffs' state law] claims are frivolous.'" Silliman v. Hawes Fin. Grp., Inc., 2015 U.S. Dist. LEXIS 112806, at *11 (D. Or. Aug. 26, 2015) (dealing with non-IDEA claims that provide for attorney's fees), citations omitted. Thus, this counterclaim is dismissed without prejudice. The NSD may still make a motion for attorney's fees at the end of these proceedings if they are the prevailing party and the requirements of Section 1415(i)(3)(B)(i)(III) are satisfied; this dismissal does not foreclose that possibility.

**B. ADA**

The NSD argues that Plaintiffs have not stated an ADA claim because they "cite to no

specific section, instead choosing to cite to all of these statutes. They merely recite an entire body of law relating to discrimination without citing the specific statute upon which they base their claims. This is insufficient to give District fair notice of Plaintiffs/Cross-Defendants' claims and, therefore, for this reason alone, Plaintiffs/Cross-Defendants' claims should be dismissed." Doc. 40, 3:9-13. In relevant part, the FAC states:

> 59. The ADA prohibits discrimination – including exclusion from participation in or denial of the benefits of the services, programs, or activities of a public entity and the benefits of a public education – based on disabilities.
>
> 60. During all relevant times, Plaintiff E.E. was a "qualified individual with a disability" within the meaning of the ADA.
>
> 61. During all relevant times, Defendant was a public entity providing services, programs or activities. As such, Defendant was obligated to provide Plaintiff E.E. with reasonable accommodations that E.E. needed in order to enjoy meaningful access to the benefits of a public education.
>
> 62. Defendants intentionally and/or with deliberate indifference violated the ADA by (i) denying Plaintiff E.E. an equal opportunity to participate in and enjoy the benefits of Defendant's services, programs, and activities based on his disability; (ii) failing to make reasonable accommodations that would enable E.E. to have meaningful access to the benefits of a public education; and (iii) failing to protect E.E. from disability-based bullying and harassment.

Doc. 25, 17:12-18:3.

"Notice pleading requires the plaintiff to set forth in his complaint claims for relief, not causes of action, statutes or legal theories. This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims. A complaint need not identify the statutory or constitutional source of the claim raised in order to survive a motion to dismiss." Alvarez v. Hill, 518 F.3d 1152, 1157 (9th Cir. 2008), citations omitted. Here, Plaintiffs have cited to the ADA. As the NSD is a local governmental entity, "To prove a public program or service violates Title II of the ADA, a plaintiff must show: (1) he is a 'qualified individual with a disability'; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." Weinreich v. L.A. Cty. Metro. Transp. Auth., 114 F.3d 976, 978 (9th Cir. 1997), citations omitted. Plaintiffs' FAC states that E.E. "has

7

been diagnosed with Autism Spectrum Disorder." Doc. 25, 3:13-4. The above quoted section states that he was denied the full benefits of a public education due to his disability (through lack of accommodation and protection from harassment). The FAC includes sufficient facts to state an ADA Title II claim.

**C. Section 504**

Similarly, the NSD argues that Plaintiffs have not stated a claim because "Under Section 504, qualified individuals may not be subjected to discrimination, excluded from participation in, or denied the benefits of any program or activity. Plaintiffs/Cross-Defendants have not identified any program or activity which Student was excluded from or denied the benefits of, based on his disability. Instead, Plaintiffs/Cross-Defendants make non-specific conclusory allegations." Doc. 40, 4:14-18. In relevant part, the FAC states "55. During the 2019-2020 school year, Defendant and its employees failed to appropriately assess Plaintiff E.E. in all areas of suspected disability and failed to provide him with reasonable accommodations, services, and supports – including but not limited to an appropriate behavior plan, properly trained behavior aides, occupational therapy, and speech and language services – designed to meet his individual educational needs as adequately as the needs of other non-disabled students are met by the Defendant. This denied Plaintiff E.E. a FAPE, an equal opportunity to participate in and enjoy the benefits of Defendant's services, programs, and activities, and meaningful access to the benefits of a public education based solely on his disability." Doc. 25, 16:11-22. "The regulations adopted pursuant to section 504 require qualifying public schools to 'provide a free appropriate public education to each qualified handicapped person.'" A.G. v. Paradise Valley Unified Sch. Dist. No. 69, 815 F.3d 1195, 1203 (9th Cir. 2016), quoting 34 C.F.R. § 104.33(a). The FAC identified public education as the program and activities from which E.E. was excluded. The FAC includes sufficient facts to state a Section 504 claim.

///

///

## IV. Order

Plaintiffs' motion to dismiss is GRANTED. The NSD's counterclaim for attorney's fees and costs is DISMISSED without prejudice.

The NSD's motion to dismiss is DENIED.

IT IS SO ORDERED.

Dated: September 22, 2021

_____
SENIOR DISTRICT JUDGE